1
2
3
4

**HEDIN HALL LLP**
David W. Hall (SBN 274921)
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
E-mail: dhall@hedinhall.com

5
6
7
8

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Blvd., 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

9    [Additional counsel on signature page]

10   *Counsel for Plaintiff and the Putative Class*

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13
14

JAKE CARMACK, individually and on behalf
of all others similarly situated,

Case No. 5:19-cv-347

15
              Plaintiff,

**CLASS ACTION COMPLAINT**

(JURY TRIAL DEMANDED)

16   v.

17
18

NC3 SYSTEMS, INC., doing business as
"Caliva,"

              Defendant.

19          Plaintiff Jake Carmack, individually and on behalf of all others similarly situated, complains

20   and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel,

21   and on information and belief as to all other matters.  Plaintiff believes that substantial evidentiary

22   support will exist for the allegations set forth in this complaint, after a reasonable opportunity for

23   discovery.

24                      **NATURE OF ACTION**

25          1.       Plaintiff brings this action for legal and equitable remedies resulting from the illegal

26   actions of NC3 Systems, Inc., doing business as "Caliva," in transmitting unsolicited, autodialed SMS

27   or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous

28

1  other individuals across the country, in violation of the Telephone Consumer Protection Act, 47

2  U.S.C. § 227 ("TCPA").

3  **JURISDICTION AND VENUE**

4      2.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

5  and 47 U.S.C. § 227.

6      3.    Personal jurisdiction and venue are proper in this district because Defendant maintains

7  its corporate headquarters in this district, because Plaintiff resides within this district, and because

8  Plaintiff's claims arose in substantial part in this district.

9  **PARTIES**

10      4.    Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff

11  is, and at all times mentioned herein was, a citizen and resident of San Jose, California.

12      5.    Defendant NC3 Systems, Inc., doing business as "Caliva," is a cannabis dispensary

13  and cultivation facility and a "person" as defined by 47 U.S.C. § 153(39).  Defendant maintains, and

14  at all times mentioned herein maintained, its corporate headquarters and principal place of business

15  in San Jose, California.

16  **THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

17      6.    To address consumer complaints regarding certain telemarketing practices, Congress

18  enacted the TCPA, 47 U.S.C. § 227, in 1991.  The TCPA prohibits, *inter alia*, the use of automated

19  telephone equipment, or "autodialers," to make any call, including sending a text message, to a

20  wireless number absent an emergency or the "prior express consent" of the party called.  And in the

21  case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by

22  applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party

23  before initiating such calls or texts using an autodialer or prerecorded voice.

24      7.    According to findings by the Federal Communication Commission ("FCC"), which is

25  vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are

26  prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls

27  and they can be costly and inconvenient. The FCC also recognized that wireless customers are

28

CLASS ACTION COMPLAINT

1    charged for such incoming calls and texts whether they pay in advance or after the minutes or texts

2    are used.

3         8.    One of the most prevalent bulk advertising methods employed by companies today

4    involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the

5    transmission and receipt of short text messages to and from wireless telephones.  Another similar

6    service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS

7    system, but also permits the transmission of photos and videos via text message.  According to a

8    recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages

9    of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[1]

10        9.    SMS and MMS text messages are directed to a wireless device through a telephone

11   number assigned to the device. When an SMS or MMS text message is successfully transmitted, the

12   recipient's wireless phone alerts the recipient that a message has been received.  SMS and MMS text

13   messages are received virtually anywhere in the world.

14        10.   Unlike more conventional advertisements, SMS and MMS message advertisements

15   can actually cost their recipients money because wireless phone users must pay their wireless service

16   providers either for each text message they receive or incur a usage allocation deduction to their text

17   messaging or data plan, regardless of whether the message is authorized.

18        11.   Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular

19   device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

20                    **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

21        12.   "In September of 2016, Caliva was ranked #1 dispensary in the nation by Business

22   Insider"[2] – an achievement attributable in no small part to the company's aggressive digital marketing

23   efforts.[3]

24   ─────────────────

25   [1]  Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research, http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

26   [2]  About Caliva, LinkedIn, available at https://www.linkedin.com/company/caliva/about/ (last accessed Jan. 19, 2019).

27   [3]  Aimee Lee Webber, "A Q&A with the President [of Caliva] Dennis O'Mally," CEOWORLD

28   Magazine, Apr. 10, 2018, available at https://ceoworld.biz/2018/04/10/a-qa-with-the-president-

13.     Text-message marketing has been especially effective for building Defendant's business.  As explained by one of Defendant's marketing employees, "text messages are the most effective drivers of sales, and of getting customers through the door[.]  It's huge in this industry, and we have tens of thousands of people who receive text marketing messages from us."[4]

14.     In its brick-and-mortar stores, Defendant uses a point-of-sale loyalty system called "Baker," provided by Baker Technologies, Inc., to collect customers' telephone numbers and then "target" those customers with text messages advertising its marijuana products.[5]

15.     Although Defendant claims that it only uses the customer information collected by Baker "to stay in touch with customers who have opted-in to receiving text messages about sales and more," the reality is that Defendant also sends its marketing text messages to customers who, like Plaintiff, have shopped at Defendant's brick-and-mortar stores but never opted in to receive Defendant's autodialed text message advertisements, as described below.

16.     Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (669) ***-9956 (the "9956 Number").  The 9956 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

17.     In or around September through November 2018, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, including without limitation Baker Technologies, Inc., numerous SMS or MMS text message advertisements to the 9956 Number without Plaintiff's prior express written consent. Examples of the text messages transmitted by Defendant to the 9956 Number are depicted in the screenshot below:

dennis-omalley/ (last accessed Jan. 19, 2019) (Q: "What are some of the ways you have to creatively market your company?" A: "We haven't seen many restrictions. We effectively work with Facebook, Instagram, Google in the appropriate ways to get our messaging out. We used email and digital ad channels as well as billboards, print ads well. We think our marketing mix is in a good place.").

[4]  Caliva, "Cannabis and Tech: A Budding Relationship," July 24, 2018, available at https://b2b.gocaliva.com/cannabis-and-tech/ (last accessed Jan. 19, 2019).

[5]  *See id.*

1

2

3

4

5

6

7

8

9

10

11

12



13    18.    The hyperlinked URLs within the above-depicted text messages were leased or owned,

14  and were operated and maintained, by Defendant or an agent or affiliate of Defendant, including

15  without limitation Baker Technologies, Inc.

16    19.    When visited, the URLs in the above-depicted text messages re-direct to websites

17  owned and operated by Defendant, at which Defendant advertises and markets the commercial

18  availability of its cannabis goods and services, which Defendant sells for profit.

19    20.    The source of the unsolicited text messages that Defendant transmitted to the 9956

20  Number was "(844) 650-2791", which is a telephone number leased by Defendant or Defendant's

21  agent(s) or affiliate(s), including without limitation Baker Technologies, Inc., and used for operating

22  Defendant's text message marketing program.

23    21.    Because Plaintiff is alerted by his cellular device, by auditory or visual means,

24  whenever he receives a text message, the unsolicited text messages that Defendant transmitted to

25  Plaintiff's cellular device were invasive and intruded upon Plaintiff's seclusion upon receipt. Plaintiff

26  became distracted and aggravated as a result of receiving Defendant's unsolicited text messages.

27

28

22.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant (including without limitation Baker Technologies, Inc.) to Plaintiff's 9956 Number and to the numbers of the members of the Class defined below occurred using an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

23.     Defendant transmitted its text messages to the 9956 Number and to the numbers of the members of the Class defined below using an "automated telephone dialing system" because its text messages were sent from a telephone number used to message consumers *en masse*; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers, *en masse*, in an automated fashion and without human intervention.

24.     And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other putative Class members in an automated fashion and without human intervention, with hardware and software (provided by, among other agents or affiliates, Baker Technologies, Inc.) that received and stored lists of telephone numbers to be dialed and then dialed such numbers automatically.[6]

25.     The complained of SMS and/or MMS text messages sent by Defendant to the 9956 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations.  This is because Defendant sent the messages in order to advertise and market its goods and services, for the purpose of ultimately selling such goods and services to Plaintiff and other Class members for commercial profit.

---

[6] *See* "Welcome to Your First 90 Days," Baker Technologies, Inc., available at https://info.trybaker.com/customer-center/onboarding-roadmap (last accessed Jan. 19, 2019) (describing the "onboarding roadmap" for Baker Technologies, Inc.'s clients, including Defendant, to begin sending SMS text message advertisements to customers, a process which begins with "import[ing] [a] client list" and "send[ing] out your first SMS campaign," and only later suggests "establish[ing] marketing best practices").

CLASS ACTION COMPLAINT

26.    Neither Plaintiff nor any members of the proposed Class ever provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit Defendant to transmit text messages to the 9956 Number or to any of the Class's telephone numbers using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

27.    <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States to whom, between January 19, 2015 and the present, one or more text message(s) promoting Defendant's goods or services was delivered by Defendant or an affiliate, subsidiary, or agent of Defendant, and who did not provide Defendant prior express written consent to be sent such text message(s).

28.    Defendant, its employees, and agents are excluded from the Class.

29.    Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

30.    Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

31.    This Class Action Complaint seeks injunctive relief and monetary damages.

32.    This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

33.    Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

34.    <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of

the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

35.   <u>Typicality</u>. Plaintiff was sent at least one text message from Defendant without providing his "prior express written consent" to be sent such message(s) from Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

36.   <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

37.   <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other consumer protection statutes.

38.   <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

CLASS ACTION COMPLAINT

b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

39. <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones.  The Class members can be readily located

1   and notified of this class action through Defendant's records and, if necessary, the records of cellular

2   telephone providers.

3       40.     Additionally, the prosecution of separate actions by individual Class members may

4   create a risk of multiple adjudications with respect to them that would, as a practical matter, be

5   dispositive of the interests of other members of the Class who are not parties to such adjudications,

6   thereby substantially impairing or impeding the ability of such nonparty Class members to protect

7   their interests. The prosecution of individual actions by Class members could further establish

8   inconsistent results and/or establish incompatible standards of conduct for Defendant.

9       41.     Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds

10  generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory

11  relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff

12  alleges that the TCPA violations complained of herein are substantially likely to continue in the future

13  if an injunction is not entered.

14                  **CLAIM FOR RELIEF**
                VIOLATION OF THE TELEPHONE
15              CONSUMER PROTECTION ACT
                     (47 U.S.C. § 227)
16
17      42.     Plaintiff incorporates by reference paragraphs 1-41 of this Class Action Complaint as

18  if fully stated herein.

19      43.     The foregoing acts and omissions constitute violations of the TCPA by Defendant,

20  including but not limited to violations of 47 U.S.C. § 227(b)(1).

21      44.     As a result of Defendant's violations of the TCPA, Plaintiff and all Class members are

22  entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future

23  pursuant to 47 U.S.C. § 227(b)(3).

24      45.     As a result of Defendant's violations of the TCPA, Plaintiff and all Class members are

25  also entitled to, and do seek, an award of $500.00 (or $1,500.00 for any violations committed willfully

26  or knowingly) in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

27      46.     Plaintiff and Class members also seek an award of attorneys' fees and costs.

28

1

## **PRAYER FOR RELIEF**

2         WHEREFORE, Plaintiff Jake Carmack prays for relief and judgment in favor of himself and

3   the Class as follows:

4         A.       Injunctive relief prohibiting such violations of the TCPA in the future;

5         B.       As a result of each of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks

6   for himself and each class member $500.00 (or $1,500.00 for any violations committed willfully or

7   knowingly) in statutory damages;

8         C.       An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

9         D.       An Order certifying this action to be a proper class action pursuant to Federal Rule of

10  Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems

11  appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firms

12  representing Plaintiff as counsel for the Class.

13

## **DEMAND FOR JURY TRIAL**

14        Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal

15  Rule of Civil Procedure 38(b) on all claims so triable.

16  Dated:  January 19, 2019                  Respectfully submitted,

17

18                                            **HEDIN HALL LLP**

19                                            By: /s/ Frank S. Hedin
                                                   Frank S. Hedin

20                                            Frank S. Hedin (SBN 291289)
                                              1395 Brickell Ave, Suite 900
21                                            Miami, Florida 33131
                                              Telephone: (305) 357-2107
22                                            Facsimile: (305) 200-8801
                                              E-mail: fhedin@hedinhall.com

23                                            **HEDIN HALL LLP**
                                              David W. Hall (SBN 274921)
24                                            Four Embarcadero Center, Suite 1400
                                              San Francisco, California 94111
25                                            Telephone: (415) 766-3534
                                              Facsimile: (415) 402-0058
26                                            E-mail: dhall@hedinhall.com

27                                            **BURSOR & FISHER, P.A.**
                                              L. Timothy Fisher (SBN 191626)
28

- 11 -
CLASS ACTION COMPLAINT

1990 North California Blvd., 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
888 Seventh Avenue
New York, New York 10019
Telephone: (646) 837-7142
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and Putative Class*

- 12 -
CLASS ACTION COMPLAINT